**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

HRCC LTD., a British Virgin Islands
corporation,

      Plaintiff,

v.

HARD ROCK CAFE INTERNATIONAL
(USA), INC., a Florida corporation, TOM
PEREZ, an individual, HAMISH DODDS, an
individual, and MICHAEL BEACHAM, an
individual,

      Defendants.

Case No. 6:14-cv-02004-PGB-KRS

**MOTION TO DISMISS AND MEMORANDUM IN SUPPORT**

Pursuant to Rule 12(b)(3),(6) & (7), Federal Rules of Civil Procedure, Defendants move to

dismiss Plaintiff's First Amended Complaint (Doc. 11), and say:

**I.     INTRODUCTION**

    **A.     The Nassau, Bahamas Hard Rock Café® Franchise**

This action concerns a franchise relationship between Plaintiff HRCC Ltd. ("**HRCC**") and

non-party Hard Rock Limited ("**HRL**").  Pursuant to a franchise agreement[1] between them, HRL

granted HRCC the right to operate a Hard Rock Café® restaurant in Nassau, Bahamas.  (Am.

Compl., ¶ 18).  In return, HRCC promised, among other things, to pay HRL an ongoing royalty

equal to 5% of its food sales and 10% of its retail merchandise sales.  (Id.).

    **B.     HRCC's Strategic Exclusion of HRL**

HRCC is a British Virgin Islands company.  (Am. Compl., ¶ 1).   HRL is a Bailiwick of

---

[1] A copy of the franchise agreement between HRL and HRCC is attached to the Declaration of Jay
Wolszczak filed with this Motion.

Jersey[2] company.  (Dec. of J. Wolszczak, ¶ 3).  HRL was initially a party to this lawsuit (see Doc. 1), but HRCC dropped HRL through its Amended Complaint.  (See Doc. 11).  HRCC did this because HRL's presence destroyed alienage jurisdiction.[3]  (See Doc. 9, 10).

### C. The First-Filed Jersey Litigation

The franchise agreement between HRL and HRCC stipulates to the application of Jersey law to their relationship and the nonexclusive venue of courts in the Channel Islands for disputes:

> (f)  Applicable Law and Jurisdiction.  This Agreement shall be construed, enforced, and performed in accordance with the internal Laws of the Island of Jersey, without reference to the principles of comity or conflicts of law thereof.  For all purposes and disputes hereunder, the parties hereto consent and agree that the courts of the Channel Islands shall have nonexclusive jurisdiction over any case, claim or dispute arising out of this Agreement.

In January of 2014, HRL and two affiliates[4] sued HRCC in the Royal Court of Jersey. (Dec. of J. Garrood, ¶ 2).  HRL's lawsuit concerned HRCC's failure to pay royalties and honor the post-termination obligations of the franchise agreement and two related agreements (the "**Jersey Litigation**").  (Id., ¶3 & Ex. "A").  HRL sought money damages and a declaration that the agreements with HRCC were validly terminated.  Although HRCC was represented by counsel in the Jersey litigation, it ultimately did not defend the Jersey Litigation.  (Id., ¶¶ 5-9, Ex. "C", "F"). Consequently, on February 28, 2014, a $91,801.44 judgment was entered against HRCC and in favor of HRL on the unpaid franchise royalties claim.  (Id., ¶ 8, Ex. "G").  Additional claims

---

[2] The Island of Jersey, officially called The Bailiwick of Jersey, is one of the Channel Islands – one of two island countries in the English Channel possessing self-governing parliamentary democracies, judiciaries and other functions typical of government.  CIA World Factbook (http://1.usa.gov/1CNS0Fy) (last updated June 18, 2014).

[3] Alienage jurisdiction is a form of diversity jurisdiction under which federal courts may hear cases between "citizens of a state and citizens or subjects of a foreign state."  28 U.S.C. § 1332(a)(2).

[4] One of those affiliates suing in Jersey is Defendant Hard Rock Café International (USA), Inc., which administers the Hard Rock Rewards customer loyalty program.  (Dec. of J. Garrood, ¶ 2 & Ex. "A"; Dec. of J. Wolszczak, ¶ 8).  The other affiliate suing in Jersey is non-party Hard Rock Café International (STP), Inc., which leases rock and roll genre memorabilia for display at franchised Hard Rock Café® restaurants. (Dec. of J. Garrood, ¶ 2 & Ex. "A"; Dec. of J. Wolszczak, ¶ 7).

against HRCC were left to later resolution.  (Id.).  The Jersey Litigation was thereafter stayed for several months due to reports of HRCC's insolvency[5] proceedings, but has recently been restored and a summary judgment hearing on all remaining claims is set before The Royal Court of Jersey on February 6, 2015.  (Id., ¶¶ 10-12 & Ex. I-J).

### D. HRCC's Amended Complaint

HRCC's Amended Complaint contains 90 paragraphs of general allegations discussing a variety of gripes from its fourteen years as a Hard Rock Café® franchisee.  Following these general allegations are three counts: (1) for violation of Florida's Deceptive and Unfair Trade Practices Act ("**FDUTPA**"); (2) civil conspiracy; and (3) constructive termination of the franchise agreement.  HRCC seeks disgorgement of all monies paid by HRCC under the franchise agreement, an award of actual and compensatory damages, attorneys' fees and costs.

HRCC's Amended Complaint does not disclose the existence of the Jersey Litigation and does not attach a copy of its franchise agreement with HRL. In place of HRL, HRCC sues Hard Rock Café International (USA), Inc. ("**Hard Rock (USA)**"), alleging that HRL is the "alter ego" and "mere instrumentality" of Hard Rock (USA).  (Am. Comp. ¶ 14).  HRCC is also suing three Hard Rock (USA) executives – Hamish Dodds, Tom Perez and Michael Beacham – in its FDUTPA and conspiracy counts.

## II. FAILURE TO JOIN AN INDISPENSABLE PARTY

### A. Rule 12(b)(7) Standard

A party may move to dismiss a complaint under Rule 12(b)(7) if an indispensable party has not been joined in the action.  In assessing a motion to dismiss under this Rule, a district court

---

[5] The Amended Complaint refers to a "liquidation" of HRCC, but that insolvency process has not been confirmed as occurring or occurred. (Am. Compl., ¶ 73; Dec. of J. Garrood, ¶11).

must first decide whether the absent party is "required"[6] under Rule 19(a).  If a required party's joinder is not feasible, then the court must decide whether it is indispensable, that is, whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed".  See Fed. R. Civ. P. 19(b); see also Raimbeault v. Accurate Mach. & Tool, LLC, 302 F.R.D. 675, 682 (S.D. Fla. 2014) (discussing the required two-part analysis for dismissal under Rule 12(b)(7) and Rule 19; Clay v. AIG Aerospace Ins. Servs, Inc., No. 6:14-cv-235-Orl-40GJK, 2014 WL 6469422, at *7 (M.D. Fla. Nov. 17, 2014) (same).  When evaluating a 12(b)(7) motion, courts review the pleadings, affidavits and other evidence introduced by the parties.  See Estes v. Shell Oil Co., 234 F.2d 847, 849 n.5, 850 (5th Cir. 1956); Citizen Band Potawatomi Indian Tribe of Okla. v. Collier, 17 F.3d 1292, 1293 (10th Cir. 1994).

### B.   HRL is a Required Party

A required party includes one that "in that person's absence, the court cannot accord complete relief among existing parties".  Fed. R. Civ. P. 19(a)(1)(A).  The Advisory Committee's notes provide that the "complete relief" clause of this Rule was designed to "stress[] the desirability of joining those persons in whose absence the court would be obliged to grant partial or 'hollow' rather than complete relief to the parties before the court."  Fed. R. Civ. P. 19(a) (advisory committee's note).  A party is also "required" where the party has an interest in the action and resolution of the action may either "as a practical matter impair or impede the person's ability to protect the interest" or "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B); see Laker Airways, Inc. v. British Airways, PLC, 182 F.3d 843 (11th Cir. 1999)("A party is considered `necessary' to

---

[6] In 2007, Rule 19 was amended to replace the word 'necessary' with 'required' and eliminate the term 'indispensable'.  Even so, use of 'necessary' and 'indispensable' persists – because the changes were stylistic only and left "the substance and operation of [Rule 19] unchanged."  Republic of Philippines v. Pimentel, 553 U.S. 851, 862 (2008).

the action if the court determines either that complete relief cannot be granted with the present parties or the absent party has an interest in the disposition of the current proceedings.").

Complete relief among the existing parties cannot be accorded in the absence of HRL. In each of its three counts, HRCC complains of Defendants' refusal to provide operational concessions under the franchise agreement and their "wrongful" termination of the franchise agreement for fabricated reasons. (Am. Compl., ¶ 95(a)-(b), (f)-(g); ¶101(a)-(b), (f)-(g) & ¶124). The concessions HRCC was refused allegedly included the franchised restaurant's hours of operation, food portion size and a reduction of royalties required to be paid. (Id., ¶¶ 30, 32 & 39). These matters are regulated through the franchise agreement between HRL and HRCC. (See Franchise Agreement, § 9 (operating standards); § 4 (initial and continuing fees)). Thus, even though HRCC is seeking to impair and constrain the Franchise Agreement's duties and obligations, it has not joined the singular, essential party to make that determination – its counterparty under the Franchise Agreement – and thereby undermines the Court's ability to render complete relief among existing parties. See Raimbeault, 302 F.R.D. 675, 684. This is laid bare by the Amended Complaint's ad damnum, which demands the disgorgement of all sums paid by HRCC in connection with the franchised restaurant -- monies which are payable to HRL, as franchisor, under the parties' franchise agreement. (See Am. Compl., at p. 17; Franchise Agreement, § 4).

For many of the same reasons, HRL has an interest in the subject of this lawsuit that will be impaired or otherwise leave Hard Rock (USA) subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations. HRL's franchise agreement with HRCC, and the rights and responsibilities arising under it, are prominent, if not the sole, features of each asserted claims, and HRCC obviously seeks to impair those rights and responsibilities by this action. See Spear Group, Inc. v. Florida Power & Light Co., No. 13-80534-Civ, 2014 WL 272724, at *3 (S.D. Fla. Jan. 23, 2014) (absent party to agreement at issue was a "necessary" party to litigation because

the court would be required to adjudicate the absent party's rights under the contract and its judgment may well be binding on the absent party under *res judicata* or collateral estoppel). In fact, this lawsuit is largely predicated on HRCC's allegation that HRL is a "mere instrumentality" and "alter ego" of Hard Rock (USA). (Am. Compl. ¶¶ 13-14). See SM Energy Co. v. Smackco Operating, LLC, No. 13-0594-KD-B, 2014 WL 2215870, at *6 (S.D. Ala. May 29, 2014) (entity which is the subject of veil piercing/alter ego claim effort is a required party under Rule 19(a)). And, the risk of inconsistent obligations is by no means speculative: if Plaintiff is successful in its claims that the franchise agreement was wrongfully terminated, the relief granted in this action, and the obligations resulting from it, will be diametrically opposite to the relief sought by HRL and Hard Rock (USA) in their prior-filed lawsuit in Jersey, to wit: that the agreements with HRCC were justly and properly terminated. (See Dec. of J. Garrood, Ex. "A").

## C.    HRL is an Indispensable Party

HRL cannot be added as a defendant in this case because its presence would destroy subject matter jurisdiction.[7] See Challenge Homes, Inc. v. Greater Naples Care Ctr., Inc., 669 F.2d 667, 669 (11th Cir.1982) ("If the person should be joined [under Rule 19(a)] but cannot be (because, for example, joinder would divest the court of jurisdiction) then the court must inquire whether, applying the factors enumerated in Rule 19(b), the litigation may continue."). Therefore, guided by "equity and good conscience," the Court must decide whether this action should proceed with the existing parties or if the action should be dismissed because HRL's presence is "indispensable."

---

[7] Plaintiff alleges subject matter jurisdiction by referring generally to 28 U.S.C. § 1332(a). (Am. Compl., ¶ 6). Presumably, Plaintiff is relying on 28 U.S.C. § 1332(a)(2), which permits subject matter jurisdiction for disputes between "citizens of a state and citizens of a foreign state." Like the complete diversity rule in cases between citizens of different states, see Strawbridge v. Curtiss, 7 U.S. (3 Cranch) 267, 267 (1806), though, alienage jurisdiction prohibits an alien from suing another alien in federal court unless the suit also includes United States citizens as plaintiffs and defendants. See Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854, 860 (11th Cir. 2000); see also Docs. 9, 10.

See Fed. R. Civ. P. 19(b).  In this analysis, a district court should consider: (1) the extent to which a judgment might prejudice the absent party or existing parties, (2) the extent to which any prejudice can be lessened by shaping the relief or taking other protective measures, (3) whether a judgment would be adequate despite the nonparty's absence, and (4) whether the plaintiff would have another adequate remedy if the action is dismissed.

Courts applying the specific 19(b) factors have made it established[8] federal law that a party to a contract that is the subject of litigation, like HRL, is indispensable. See HDR Engineering, Inc. v. R.C.T. Engineering, Inc., No. 08-81040-Civ, 2010 WL 2402908, at *2 (S.D. Fla. June 15, 2010) ("Courts have recognized that a contracting party is the paradigm of an indispensable party" (citing cases) (internal quotations omitted)). Florida law, which is of dubious application to Plaintiff's claims[9], is in accord. See, e.g., Loxahatchee River Environmental Control Dist. v.

---

[8] See Bonzel v. Pfizer, Inc., 439 F.3d 1358 (Fed. Cir. 2006) (finding foreign shell company owned by American company was indispensable party that destroyed diversity because alleged shell company was original party to contract at issue); Dawavendewa v. Salt River Project Agr. Imp. and Power Dist., 276 F.3d 1150, 1156–57 (9th Cir. 2002) (a party to a contract is necessary, and if not susceptible to joinder, indispensable party to litigation seeking to decimate that contract); Clinton v. Babbitt, 180 F.3d 1081, 1088 (9th Cir. 1999) (in order to adjudicate an attack on an agreement, a court must have "jurisdiction over the parties to that agreement"); Envirotech Corp. v. Bethlehem Steel Corp., 729 F.2d 70, 76 (2d Cir. 1984) (affirming ruling that that parent corporation was indispensable to counterclaim for breach of contract, and thus dismissing claim for lack of diversity jurisdiction, where the parent corporation was the sole obligor on three of the contracts at issue and possessed rights arising from contracts that had been transferred to partnership between parent and wholly owned subsidiary which were intertwined with issues bound to be raised in action solely against subsidiary); Ward v. Deavers, 203 F.2d 72, 75 (D.C. Cir. 1953) (final judgment reversed because "there is a general rule that where rights sued upon arise from a contract all parties to it must be joined"); Travelers Indem. Co. v. Household Int'l, Inc., 775 F. Supp. 518, 527 (D. Conn. 1991)("a contracting party is the paradigm of an indispensable party"); CP Solutions PTE, Ltd. v. GE, 470 F. Supp. 2d 151, 157–58 (D. Conn. 2007) (dismissing complaint for lack of jurisdiction, as nondiverse company was a "party to a contract which is the subject of the lawsuit"); Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil Inc., 456 F. Supp. 831, 836 n.7 (D. Del. 1978) (if the "rights sued upon arise from a contract, all parties to the contract must be joined"); Jacobsen v. Luckenbach Steamship Co., 201 F. Supp. 883, 889 (D. Or. 1961) ("all parties [to a contract] are deemed indispensable and should be joined").

[9] As discussed later in this Memorandum, notwithstanding HRCC's FDUTPA and other claims, it is improbable that Florida law applies to claims of injury by a British Virgin Islands entity operating a restaurant in the Bahamas under a franchise agreement calling for application of Jersey law.

Martin County Little Club, Inc., 409 So. 2d 135, 137 (Fla. 4th DCA 1982) (signatories to contract at issue in litigation are indispensable).

Likewise, HRL's alleged status as an "alter ego" of Hard Rock mandates its joinder if feasible to these proceedings and dismissal of this case if not.  See Freeman v. Northwest Acceptance Corp., 754 F.2d 553, 558 (5th Cir. 1985) (nondiverse subsidiary was indispensable party in action against parent corporation because subsidiary was principal party to contract at issue); Acton Co. v. Bachman Foods, Inc., 668 F.2d 76 (1st Cir. 1982) (holding parent that played "substantial role" was indispensable party to action against subsidiary); SM Energy Co. v. Smackco Operating, LLC, No. 13-0594-KD-B, 2014 WL 2215870, at *6 (S.D. Ala. May 29, 2014) (entity which is the subject of veil piercing/alter ego claim effort is a required party and must be joined under Rule 19(a)); E&E Inv., Inc. v. Simmons Co., 169 F.R.D. 467, 472 (D.P.R. 1996) (holding subsidiary was indispensable party where "the only basis for liability is the subsidiary's breach of contract that it alone entered into with the plaintiff"); Lopez v. Shearson Am. Express, Inc., 684 F. Supp. 1144, 1147 (D.P.R. 1988) ("The law appears very clear that where the subsidiary is the primary participant in a dispute involving both the parent and the subsidiary, the subsidiary is an indispensable party."); Hanna Mining Co. v. Minn. Power & Light Co., 573 F. Supp. 1395, 1399 (D. Minn. 1983) (determining parents and subsidiary were indispensable parties where both had identical interest in subject of action).

This is further illustrated by the futility of HRCC's pursuit of alter ego claims in federal court.  That is, even if HRCC's claims were meritorious, a finding that Hard Rock (USA) and HRL are effectively one entity would destroy diversity jurisdiction because Hard Rock (USA) would thereby assume HRL's alien citizenship. See Freeman, 754 F.2d at 558; Barnett v. Borg-Warner Acceptance Corp., 488 F. Supp. 786, 794 (E.D. Ark. 1980).  In other words, if HRCC could hold Hard Rock (USA) liable on a "piercing the veil theory", such a finding would impute HRL's foreign

citizenship to Hard Rock (USA) and divest the court of subject matter jurisdiction. Id.  In Freeman, the plaintiffs tried to establish diversity jurisdiction by suing the diverse parent company and arguing an alter-ego theory to avoid joining the non-diverse subsidiary. 754 F.2d at 555. The Fifth Circuit raised the issue of subject matter jurisdiction *sua sponte* and vacated the judgment on a jury verdict for lack of jurisdiction because, after considering the citizenship of the subsidiary, the parties lacked diversity. Id. The court observed "[t]he Freemans are by no means the first plaintiffs to use the alter ego doctrine in an attempt to avoid joinder of a nondiverse party," but noted the "tactic has met with singularly small success." Id. at 559.

While Freeman addressed domestic entities, courts apply the same reasoning to companies with foreign citizenship. See Mouawad Nat'l Co. v. Lazare Kaplan Int'l, Inc., 476 F. Supp. 2d 414 (S.D.N.Y. 2007). In Mouawad, the plaintiffs claimed a Belgian company acted as the defendant's agent and sought discovery to support an alter ego theory. Id. at 425. Similar to HRCC, the Mouawad plaintiffs contended the foreign company "was a mere sham with no employees and that [defendant] is the undisclosed principal" and "the ultimate party in control." Id. at 425-26. The plaintiffs abandoned their alter ego theory only after the defendant pointed out that involving the Belgian company in the lawsuit under an alter ego theory would destroy diversity jurisdiction. Id. at 426. The court explained: "[i]f plaintiffs—both Saudi Arabian corporations—were to argue once again that [defendant] was the alter ego of [the Belgian company], [the company's] Belgium citizenship would be added to [defendant's] New York citizenship, divesting this Court of diversity jurisdiction." Id. Numerous other courts have similarly dismissed alleged alter ego claims for lack of diversity jurisdiction. See, e.g., Panalpina Welttransport GmbH v. Geosource, Inc., 764 F.2d 352, 355 (5th Cir. 1985) ("[I]f a parent were sued as a result of activities of a subsidiary, the alter ego doctrine would attribute the subsidiary's place of incorporation to the parent even if such resulted in destroying complete diversity."); Grunblatt v. UnumProvident Corp., 270 F. Supp. 2d

347, 352 (E.D.N.Y. 2003) ("Two corporations that are deemed to be alter egos of each other acquire the citizenship of each other."); Rivera Rojas v. Loewen Grp. Int'l, Inc., 178 F.R.D 356, 364 (D.P.R. 1998) ("As a general rule, the use of the alter ego doctrine has been unsuccessful as a means to avoid the joinder of a nondiverse party."); Pyramid Sec., Ltd. v. Int'l Bank, 726 F. Supp. 1377, 1386 (D.D.C. 1989) ("[F]or purposes of diversity jurisdiction, a corporation may have multiple citizenships: its place of incorporation, its principal place of business, and the place of incorporation of its alter ego subsidiary.").  These cases promote the federal policy of limiting diversity jurisdiction and it follows that "the creation of diversity jurisdiction is one of the least compelling reasons for disregarding the corporate entity." Amarillo Oil Co. v. Mapco, Inc., 99 F.R.D. 602, 604 (N.D. Tex. 1983).[10]

Although the above legion of cases overwhelmingly supports the indispensability of HRL in this matter – and, in fact, call into doubt the Court's existing subject matter jurisdiction – the specific factors of Rule 19(b) are nonetheless discussed below.  Consideration of these factors should occur with the corresponding interests served by them: (1) the interest of the absent party; (2) the defendant's interest in avoiding inconsistent relief, multiple litigation or sole responsibility for a liability which it shares with an absent party; (3) the interests of the public and the courts in consistent, complete, and efficient settlement of cases, and (4) the plaintiff's interest in having an appropriate forum.  Provident Tradesman Bank & Trust Co. v. Patterson, 390 U.S. 102, 108-11 (1968).

### 1.      Prejudice to HRL

Consideration of the first factor under Rule 19(b) – prejudice to HRL – is similar to the

---

[10] This argument could conceivably be made as a separate motion to dismiss under Rule 12(b)(1) for lack of (facial) subject matter jurisdiction.  In any event, counsel is obligated to identify issues of subject matter jurisdiction where it is in doubt and, in particular, notes that Defendants are not willing participants in any effort by HRCC to manufacture subject matter jurisdiction.  See Fitzgerald v. Seaboard System RR, Inc., 760 F.2d 1249, 1251 (11th Cir. 1985) (warning that Rule 11 sanctions are available and "should be and will be utilized" against a party or parties who attempt to create jurisdiction that does not exist).

analysis under Rule 19(a). <u>See</u> <u>Spear Group</u>, 2014 WL 272724, at *4 (noting that prejudice component of Rule 19(b) "closely parallels" court's analysis of whether the party is necessary). As already noted, HRL's franchise agreement with HRCC is the heart of each of HRCC's claims. This exposes HRL to considerable danger of being bound to the judgment by collateral estoppel or similar theory or even derivatively liable to HRCC as the "alter ego" of Hard Rock (USA). <u>See</u> <u>id.</u> Moreover, a finding in favor of HRCC that the franchise agreement was wrongfully terminated or the litany of other franchise-agreement related claims, would be at odds with the money judgment for unpaid royalties HRL obtained against HRCC in Jersey more than a year ago as well as the relief it is prospectively seeking – that the franchise agreement was properly and justly terminated.

### 2.      Prejudice to Defendants

The second factor takes into account the prejudice to the existing defendant and its interest in avoiding inconsistent relief and multiple litigation. <u>See</u> <u>Spear Group</u>, 2014 WL 272724, at *4. While admittedly the individual defendants are less concerned with these issues, they are of substantial prejudice to Hard Rock (USA). In particular, as already noted, Hard Rock (USA) is already a litigant (along with HRL) in a case it filed against HRCC more than a year ago in Jersey. Defendants are able to fathom no reasonable avoidance or fashioning of the remedy in this case which would ameliorate the multiplicity of suits it is already facing and the risk of inconsistent results. Indeed, HRCC's success in this lawsuit will surely be inconsistent with the results Hard Rock (USA) has obtained thus far in the Jersey Litigation and likely inconsistent with the results it hopes to obtain in that foreign case prospectively.

### 3.      Adequacy of Judgment

The adequacy of the judgment factor concerns the public and judiciary's interest in the efficient, complete settlement of controversies. <u>See</u> <u>Spear Group</u>, 2014 WL 272724, at *5. This

factor also weighs heavily in favor of finding indispensability.   It is HRCC that is wholly responsible for the multiplicity of actions and resulting inefficiencies and risk of inconsistent results.   Indeed, the overriding issues of equity and good conscience in Rule 19(b) should never favor plaintiffs, like HRCC here, that have manufactured subject matter jurisdiction where none should exist and unnecessarily burdened the courts with claims that should have been heard as counterclaims elsewhere.   Moreover, HRCC is free, at least in principle, to sue HRL subsequently in the event it is unsuccessful in this case and res judicata or collateral estoppel does not apply. See id.

### 4.   Adequacy of Another Forum

The last consideration is the adequacy of another forum if this case is dismissed.  See Spear Group, 2014 WL 272724, at *5.   HRCC has no impediment to bringing this action in the most logical forum – Jersey.[11]   It is inconceivable that HRCC would not have a fair, and considerably more efficient, proceeding in that court.[12]

## III.   FORUM NON CONVENIENS

### A.   *Forum Non Conveniens* Standard

Courts evaluate a motion to dismiss based on the doctrine of *forum non conveniens* as a motion for improper venue pursuant to Rule 12(b)(3). See, e.g., Meier v. Sun Int'l Hotels, Ltd., 288 F.3d 1264, 1276 (11th Cir. 2002). To obtain a dismissal under the doctrine, a defendant must demonstrate: (1) an adequate alternative forum is available; (2) public and private factors weigh

---

[11] HRCC is surely capable of prosecuting the same claims it has in this case in Jersey as evidenced by the recent counterclaim litigation brought by HRCC's affiliate by common ownership against HRL in that court system.   (See Dec. of J. Garrood, Ex. D & E).  These counterclaims by HRCC's affiliate also relate to a terminated franchise agreement, albeit one for Hard Rock Café® Cayman Islands, contends that its franchise agreement's termination was "wrongful", that HRL unreasonably refused to make concessions concerning portion size and operating hours, i.e., allegations nearly identical to those made in this case.

[12] To be sure, all of the individual defendants consent to jurisdiction in Jersey and the undersigned is authorized to receive initial process for them should HRCC elect to bring a proceeding there.

in favor of dismissal; and (3) the plaintiff can reinstate its suit in the alternative forum without

undue inconvenience or prejudice. Tazoe v. Airbus S.A.S., 631 F.3d 1321, 1330 (11th Cir. 2011).

On a Rule 12(b)(3) motion, the court "'may consider matters outside the pleadings, and often must

do so, since without the aid of such outside materials, the court would be unable to discern the

actual basis, in fact, of a party's challenge to the bare allegation in the complaint that venue is

proper to that court.'" Horberg v. Kerzner Int'l Hotels Ltd., 744 F. Supp. 2d 1284, 1288 (S.D. Fla.

2007) (quoting Ward v. Kerzner Int'l Hotels, No. 03-23087-CIV-JORDAN, 2005 WL 2456191, at

*2 (S.D. Fla. Mar. 30, 2005)).  The forum non conveniens determination is committed to the sound

discretion of the trial court. Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981).

**B.**     ***Forum Non Conveniens* Analysis**

**1.     Availability of Foreign Forum**

As to the first prong—the adequacy and availability of the foreign forum—the court

considers whether the foreign court can assert jurisdiction over the litigation, cognizant that only

"'rare circumstances'" support the conclusion that the alternative forum is inadequate. Aldana v.

Del Monte Fresh Produce N.A., Inc., 578 F.3d 1283, 1290 (11th Cir. 2009) (quoting Satz v.

McDonnell Douglas Corp., 244 F.3d 1279, 1283 (11th Cir. 2001)); see also Warter v. Boston Sec.,

S.A., 380 F. Supp. 2d 1299, 1306-07 (S.D. Fla. 2004) ("'[T]he burden of establishing whether an

alternative forum exists is not a heavy one.'" (quoting Banco Latino v. Gomez Lopez, 17 F. Supp.

2d 1327, 1331 (S.D. Fla. 1998))). This requirement is generally satisfied if the defendant is

amenable to process in the other jurisdiction. Aldana, 578 F.3d at 1290.

The availability of an alternative forum for this dispute is beyond reasonable dispute.  All

defendants are amenable to process in Jersey[13] and the franchise agreement at issue stipulates that

---

[13] As stated before, supra n.12, the individual defendants also consent to jurisdiction and to receive process from the Royal Court of Jersey.

its parties will not object to the resolution of disputes in that jurisdiction, albeit on a non-exclusive basis. HRCC's affiliate by common ownership even already has counsel there and is prosecuting a parallel lawsuit (by way of counterclaim) involving nearly identical claims.   (See Dec. J. Garrood, ¶¶ 5-7 & Ex. D-E).

## 2.    Private and Public Interest Factors

Private interests at issue include the relative ease of access to evidence in the competing forum, availability of witnesses and compulsory process over them, the cost of obtaining evidence, "'and all other practical problems that make trial of a case easy, expeditious, and inexpensive.'" Leon v. Million Air, Inc., 251 F.3d 1305, 1314 (11th Cir. 2001) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). Courts generally apply a presumption that a domestic plaintiff has chosen a sufficiently convenient forum, but the presumption "'weakens' when the plaintiff is a foreigner litigating far from home." Id. at 1314-15 (quoting La Seguridad v. Transytur Line, 707 F.2d 1304, 1308 n.7 (11th Cir. 1983)).   In other words, a foreign plaintiff's forum choice is accorded "'less deference.'" Id. at 1315 (quoting Piper Aircraft Co. v. Reyno, 454 U.S. 235, 256 (1981)).  Public interest factors include "(1) the forum's interest in entertaining the suit; (2) court congestion and jury duty generated by the lawsuit; (3) the desirability of having localized controversies decided at home; and (4) the difficulty in determining applicable law and applying foreign law." Pierre-Louis v. Newvac Corp., 584 F.3d 1052, 1061 (11th Cir. 2009). The Court should determine the appropriateness of having trial in a forum at home with the applicable law rather than having the Court "untangle problems in conflict of laws, and in law foreign to itself." Gulf Oil Corp., 330 U.S. at 509.

Private and public interests support a *forum non conveniens* dismissal.  Obviously, HRCC is not a United States citizen, and as a result, its choice of forum carries less weight.  See King v. Cessna Aircraft Co., 562 F.3d 1374, 1383 (11th Cir. 2009) ("Just as it would be less reasonable to

presume an American citizen living abroad would choose an American forum for convenience, so too can we presume that a foreign plaintiff does not choose to litigate in the United States for convenience."); see also Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430 (2007) ("When the plaintiff's choice is not its home forum . . . the presumption in the plaintiff's favor 'applies with less force,' for the assumption that the chosen forum is appropriate is in such cases 'less reasonable.'" (quoting Piper, 454 U.S. at 255-56)).

Additionally, of the alternative fora available (including Jersey or, perhaps, the Bahamas), Florida has the weakest connection to the dispute. The vast majority of evidence relating to HRCC's claims and defenses is located either in the Bahamas, where the supposed injury took place, or in Grand Cayman, British West Indies, where HRCC's principal, Kevin Doyle resides (See Dec. of J. Garrood, Ex. D) or Jersey, where HRCC's principal has already been marshaling evidence in support of the (largely identical) claims against HRL brought by an affiliate of HRCC concerning a Hard Rock Café® franchised restaurant in Grand Cayman.  (See id.).  For instance, HRCC claims the costs of keeping its Nassau, Bahamas restaurant open at night "resulted in annual losses ranging from $350,000 to $400,000" and it incurred "additional expenses in hiring armed security guards." (Am. Compl. ¶¶ 40, 47). HRCC also claims Defendants "made HRCC's working conditions intolerable" and that Defendants "arranged to have HRCC's retail inventory supplies shipped" to the new franchise operator. (Am. Compl. ¶¶ 60, 75). Evidence of these allegations, witnesses concerning it, and any resulting damages necessarily lie outside of the State of Florida.

In considering public factors applicable to a *forum non conveniens* analysis, courts recognize that

> hearing cases of no interest to the United States would exacerbate docket congestion, would impose costs on the community in terms of judicial resources and jury duty, would foster the need to 'untangle problems in conflict of laws' and to decide cases 'in law foreign' to the court and would conflict with the general interest in 'having localized controversies decided at home.'

J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co., 515 F. Supp. 2d 1258 (M.D. Fla. 2007) (quoting

Piper, 454 U.S. at 241 n.6 (citations omitted))). Without question, this case will involve a complex

choice of law analysis, and foreign law will likely apply, at a minimum, to a portion of HRCC's

claims. For instance, in Count III, HRCC purports to state a claim for "constructive termination"

of the franchise agreement. This claim implicates the choice of law provision in the franchise

agreement, which provides the agreement "shall be construed, enforced, and performed in

accordance with the internal Law of the Island of Jersey, without reference to the principles of

comity or conflicts of law thereof."

  Furthermore, HRCC's claims for violation of FDUTPA and civil conspiracy sound in tort,

and courts apply the "most significant relationship" test to determine which jurisdiction's law

controls. See, e.g., Eli Research, LLC v. Must Have Info Inc., No. 2:13-cv-695-FtM-38CM, 2014

WL 4540110, at *3, *7 (M.D. Fla. Sept. 11, 2014).  Under this test, courts consider: (1) the place

where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the

domicile, residence, nationality, place of incorporation, and place of business of the parties; and

(4) the place where the relationship, if any, between the parties is centered. Id. at *3. For FDUPTA

claims, courts also consider: (a) the place where the plaintiff acted in reliance upon the defendant's

representations; (b) the place where the plaintiff received the representations; (c) the place where

the defendant made the representations; (d) the domicile, residence, nationality, place of

incorporation and place of business of the parties; (e) the place where a tangible thing which is the

subject of the transaction between the parties was situated at the time; and (f) the place where the

plaintiff renders performance under a contract that the plaintiff entered into by the false

representations of the defendant. Id. at *7.

Based on these factors, both the Bahamas and Jersey have a more significant relationship to HRCC's claims than Florida.[14] HRCC's injury occurred in the Bahamas, many witnesses to the events described in the Complaint necessarily reside there, HRCC is a British Virgin Islands corporation with its principal place of business in the Bahamas and HRCC's principal is located in Grand Cayman.  Additionally, to the extent HRCC acted in reliance on any purported representations, the actions took place in the Bahamas, and the "tangible thing" that is the subject of the parties' transaction (i.e., the Hard Rock Cafe® restaurant and retail store) is located in the Bahamas. Finally, HRCC rendered performance under the franchise agreement in the Bahamas, and Defendants allegedly transferred inventory belonging to HRCC in the Bahamas to a non-party, who is likewise a resident of the Bahamas. (See Am. Compl. ¶¶ 23, 75).

On the other hand, the parties are presently litigating a franchise dispute in Jersey, the franchise agreement contains a Jersey choice of law provision, and HRL is a Jersey corporation. The place where the relationship of the parties is centered is less clear as the franchise agreement is governed by Jersey law, but it is surely not Florida.  (See Am. Compl. ¶ 54).  And, while HRCC alleges Defendants made a number of misrepresentations, it generally does not allege where Defendants made or HRCC received the purportedly false information, although in one instance HRCC alleges Defendants Tom Perez and Michael Beacham "flew to the Cayman Islands . . . in a desperate attempt to force HRCC to enroll in the Loyalty Program." (Am. Compl. ¶ 58).

---

[14] HRCC's allegations cloud this analysis as the complaint references events dating back to 1999, even though the statute of limitations for both FDUTPA and civil conspiracy claims is four years under Florida law. See, e.g., Young v. Ball, 835 So. 2d 385 (Fla. 2d DCA 2003) (discussing statute of limitations for civil conspiracy claims); Point Blank Solutions, Inc. v. Toyobo Am., Inc., No. 09-61166-CIV, 2011 WL 1833366, at *6 (S.D. Fla. May 13, 2011) (discussing statute of limitations for FDUTPA claims). Accordingly, for purposes of this motion, Defendants disregard the alleged events that occurred outside of the limitations period, such as the negotiations leading to HRCC's execution of the franchise agreement and Hard Rock's supposed "internal strategic report" prepared in 2006. (See Am. Compl. ¶¶ 15-18, 36).

Meanwhile, Florida's relationship to the dispute, meager in comparison to the Bahamas and Jersey, includes only the Defendants' residency and a meeting that took place in Orlando, Florida after the termination of the franchise agreement.  (Am. Compl. ¶¶ 2-5, 70).

Such a convoluted choice of law analysis counsels in favor of dismissal. "Even the possibility that foreign law applies to a dispute is sufficient to warrant dismissal on forum non conveniens grounds." Warter, 380 F. Supp. 2d at 1315; see also Magnin v. Teledyne Cont'l Motors, 91 F.3d 1424, 1430 (11th Cir. 1996) (concluding it is "[f]ar better that the case be tried in [a foreign country] by one or more jurists as familiar with [foreign] law as we are unfamiliar with it"); Sigalas v. Lido Maritime, Inc., 776 F.2d 1512, 1519 (11th Cir. 1985) ("The need to resolve and apply foreign law should 'point [the trial court] towards dismissal . . . .'" (quoting Piper, 454 U.S. at 251)); Proyectos Orchimex de Costa Rica, S.A. v. E.I. du Pont de Nemours & Co., 896 F. Supp. 1197, 1204 (M.D. Fla. 1995) ("[W]hile there is some question as to whether foreign law would ultimately apply to all aspects of these cases, there is no question that these cases would ensnare this court in a difficult choice of law determination. . . . [T]he possibility that foreign law will apply weighs strongly in favor of dismissal.").

Additionally, "'foreign relations are implicated in the forum non conveniens calculus.'" Ford v. Brown, 319 F.3d 1302, 1307 (11th Cir. 2003) (quoting Esfeld v. Costa Crociere, S.P.A., 289 F.3d 1300, 1312 n.15 (11th Cir. 2002)).  As a result, "'federal courts necessarily must analyze the interest that the foreign country has in the dispute, an analysis that may raise issues of international comity.'" Id. (quoting Esfeld, 319 F.3d at 1313)). This case implicates international comity as the Jersey Litigation began more than a year ago and pertains to the same subject matter as the current dispute.  Jersey, of course, has an interest in enforcing and interpreting its own laws, resolving disputes that involve its citizens, and protecting its citizens from duplicative liability. As a result, public interest and international comity considerations counsel in favor of staying or

dismissing this action. <u>See, e.g.</u>, <u>Turner Entm't Co. v. Degeto Film GmbH</u>, 25 F.3d 1512 (11th Cir. 1994) (staying domestic legal proceedings to defer to concurrent German proceedings on the merits of the dispute).

In addition, litigating this case in Florida will consume an enormous amount of time and resources of both the court and jurors. In light of Florida's tenuous claim to the dispute, this factor supports dismissal of HRCC's claim. <u>See</u> <u>Proyectos</u>, 896 F. Supp. at 1203 ("The burden of imposing jury duty on citizens to decide a case with no connection to the forum is a significant factor in performing a *forum non conveniens* analysis. In these cases, the jury duty burden weighs heavily in favor of dismissal."); <u>Horberg</u>, 744 F. Supp. 2d at 1295 ("The dispute has little or no relation to Florida, and Florida has little or no interest in adjudicating claims under Bahamian law . . . . Compelling local jurors to sit on a trial to resolve this case that has no connection to this community would impose an unfair burden."); <u>Chierchia v. Treasure Cay Servs.</u>, 738 F. Supp. 1386 (S.D. Fla. 1990) (finding in case against Florida defendant that local jury "would have only minimal interest in protecting a New York resident from misrepresentations, mishaps, and waivers which occurred in the Bahamas").

### 3.     Plaintiff can Reinstate without Undue Prejudice or Inconvenience

Lastly, HRCC can reinstate its suit in the alternative forum without undue inconvenience or prejudice.  As noted, HRCC's affiliate already has counsel in Jersey where nearly identical claims are being prosecuted for that affiliated entity.  Further, Defendants will not object to any statute limitations bar not in existence as of the date of the Plaintiffs' filing of this action.

## IV.     FAILURE TO STATE A CLAIM

### A.     HRCC fails to state a claim under FDUTPA.

FDUTPA prohibits "unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts in the conduct of any trade or commerce." Fla. Stat. § 501.204(1) (2013).

Pursuant to Section 501.211, Florida Statutes, any person who has suffered losses as a result of a violation may commence a private action to recover actual damages, attorneys' fees, and costs. Fla. Stat. §501.211(2).

FDUPTA is a Florida statute and, naturally, applies only to wrongs occurring in the state of Florida.  Carnival Corp. v. Rolls–Royce PLC, No. 08–23318–CIV, 2009 WL 3861450, at *6 (S.D. Fla. 2009) ("FDUTPA applies only to actions that occurred within the state of Florida."); Millenium Comm. & Fulfillment, Inc. v. Office of the Attorney Gen. Dep't of Legal Affairs, State of Fla., 761 So.2d 1256, 1262 (Fla. 3d DCA 2000) (stating that FDUTPA "seeks to prohibit unfair, deceptive and/or unconscionable practices which have transpired within the territorial boundaries of [Florida] without limitation").  Plaintiff is a British Virgin Islands entity with its principal place of business in the Bahamas.  (Am. Compl., ¶ 1).   The sole allegations made by HRCC that are connected to activities in Florida are a meeting in March of 1999 and a meeting occurring after the termination of the franchise agreement.  (Am. Compl. ¶¶ 15, 70).  Whatever may have transpired at this meeting more than sixteen years ago, it is barred by the statute of limitations.  See supra n.14.  And, whatever may have happened after termination of the franchise agreement is unconnected in any fashion to the "overt acts" identified by HRCC as comprising the FDUTPA violations.  (See Am. Compl., ¶ 101).

Additionally, compensable harm under FDUTPA is limited to "actual damages," measured by the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties. Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006). Here, HRCC's FDUTPA violations pertain to consequential events, e.g., the refusal to provide concessions to improve HRCC's profitability complains its food sales were "grossly unprofitable" and seeks "recovery of all monies tendered by HRCC in connection with the opening and operation

of its Hard Rock Cafe restaurant franchise" and "lost profits." (Am. Compl. ¶ 28, p. 17).  FDUTPA does not support an award of these alleged damages. See Dorestin v. Hollywood Imps., Inc., 45 So. 3d 819, 824-25 (Fla. 4th DCA 2010) ("Proof of actual damages is necessary to sustain a FDUTPA claim. The statute does not allow the recovery of other damages, such as consequential damages." (internal citations omitted)); Rodriguez v. Recovery Performance & Marine, LLC, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) ("[W]hen a plaintiff in her complaint fails to allege a recoverable loss under FDUTPA, the complaint fails to state a cause of action under FDUTPA."); Smith v. 2001 S. Dixie Highway, Inc., 872 So. 2d 992, 994 (Fla. 4th DCA 2004) ("We conclude that the trial court was correct in dismissing appellant's complaint because appellant did not allege a recoverable loss under the statute and, therefore, failed to state a cause of action.").

Lastly, it is insufficient to generically allege, as HRCC has done here, that the individual Defendants were "direct participants" in the FDUTPA violations.  Vallina v. Mansiana Ocean Residences, LLC, No 10-cv-21506, 2011 WL 1167441, at *11 (S.D. Fla. June 17, 201) (allegations against an individual defendant for violation of FDUPTA require specification of how he or she "directly participated in the unlawful practices.")

### B.    HRCC fails to state a claim for civil conspiracy.

Under Florida law[15], a claim for civil conspiracy requires: (a) an agreement between two or more parties, (b) to perform an unlawful act, (c) the doing of some overt act in pursuance of the conspiracy, and (d) damage to plaintiff as a result of the acts done under the conspiracy. Redman v. Follett Higher Educ. Grp., Inc., 575 F. Supp. 2d 1272, 1280 (11th Cir. 2008).

HRCC's claim for conspiracy is based on wrongs identical to those alleged in support of its FDUTPA claim.  (cf. Am. Compl., ¶ 95 with Am. Compl. ¶ 101).  Thus, because HRCC fails

---

[15] Florida's laws are of suspect application to HRCC's claims.  Defendants are referring to Florida law because the underlying wrong of the conspiracy is the purported violation of a Florida statute – FDUTPA.

to state a cognizable claim for a violation of FDUTPA, its claim for civil conspiracy likewise fails. See American United Life Ins. Co. v. Martinez, 480 F. 3d 1043, 1067 (11th Cir. 2007) (conspiracy claim based on non-actionable statutory wrong must be dismissed); Redman, 575 F. Supp. 2d at 1280 ("[A] claim for conspiracy requires an actionable underlying tort or wrong.").

Moreover, HRCC fails to allege an "agreement" in furtherance of the purported conspiracy. "Since a corporation is a legal entity which can only act through its agents, officers and employees, a corporation cannot conspire with its own agents unless the agent has a personal stake in the activities that are separate and distinct from the corporation's interest." Cedar Hills Properties Corp. v. Eastern Federal Corp., 575 So. 2d 673, 676 (Fla. 1st DCA 1991).   While HRCC alleges, collectively, that all Defendants to the purported conspiracy did so "for their own personal financial gain", that does not suffice for a "personal stake in the activities" and certainly not one that indicates that that their interest in the purported conspiracy was a stake separate and distinct from the corporation's interest.  See McAndrew v. Lockheed Martin Corp., 206 F.3d 1031, 1036 (11th Cir. 2000) ("Simply put . . . a corporation cannot conspire with its employees, and its employees, when acting in the scope of their employment, cannot conspire among themselves.").

## C.    HRCC fails to state a claim for "constructive termination."

Count III of the Amended Complaint is entitled "Constructive Termination." Constructive termination, sometimes called "de facto termination, is a claim grounded in statutory law governing the franchise relationship:

> This ambitious cause of action cannot be created by a court in the absence of a clear legislative mandate or binding appellate judicial guidance ... [A] franchisee does not state a claim for constructive termination of the franchise relationship merely because the franchisee claims that the franchisor has imposed economic hardship on the franchisee through alleged breaches of one or more financial, lease or other duties under a contract within the franchise relationship while the franchisor is offering new franchise-related agreements.

Meghani v. Shell Oil Co., 115 F.Supp.2d 747, 760 (S D. Tex. 2000); see also Hannon v. Exxon Co., U.S.A., 54 F. Supp. 2d 485, 493 (D. Md. 1999) (noting in reference to the Petroleum Marketing Practices Act, that "the federal courts recite uniformly that a statutory component of the franchise must be breached in order for a constructive termination claim to be successful."). Even where such a claim is not derived from a specific statutory source, a cause of action for constructive termination requires an express or implied mandate via legislation which governs the relevant franchise relationship. See Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc., 180 F.3d 542, 553 (3rd Cir. 1999); Petereit v. S.B. Thomas, Inc., 63 F.3d 1169, 1182 (2d Cir. 1995) (requiring the controlling state law to endorse a constructive termination cause of action); see also Hopkins Pontiac GMC, Inc. v. Ally Fin. Inc., No. 5:14-cv-00183-RS-EMT, 2014 WL 6601150, at *5 (N.D. Fla. Nov. 20, 2014) (holding that even if Florida's automobile dealer franchise protection statute (§ 320.64) prohibited constructive termination, such a claim "'applies [only] where one party unilaterally modifies the terms of a contractual relationship in a manner that substantially interferes with another party's ability to obtain the benefits of the contract'"). Id. at *6 (quoting Bert Smith Oldsmobile, Inc. v. Gen. Motors Corp., No. 8:04CV2666T-27-EAJ, 2005 WL 1210993, at *2 (M.D. Fla. May 20, 2005)).

HRCC has not identified any statute or other legislative protection supporting its claim for constructive termination and thus has no basis for that claim. Moreover, the only conceivably applicable laws governing the franchise relationship would be foreign law – either of the Bahamas (where the franchised business was located) or the Bailiwick of Jersey (the law called for under the franchise agreement). If HRCC intended to rely on foreign law to substantiate its constructive termination claim, it is required to give fair notice of that law through its pleadings or otherwise, which it has not. See Fed. R. Civ. P. 41 ("A party who intends to raise an issue about a foreign country's law must give notice by a pleading or other writing.")

-23-

## V.      CONCLUSION

The Amended Complaint suffers from a variety of fatal defects.  First, HRCC's omission of HRL is inexcusable – HRL, as the counterparty to the franchise agreement at issue, is the paradigm of an indispensable party.   Second, this case does not belong in the United States under a *forum non conveniens analysis*.  It involves foreign parties, foreign witnesses, foreign evidence, and arose on foreign soil.  There is no just reason for maintaining the action in Florida much less burdening its courts and jurors with responsibility for resolving it.  Lastly, HRCC sets forth no claim upon which relief may be granted.  Its FDUTPA claim and FDUTPA-derivative conspiracy claims are inapplicable to the pleaded facts, and a claim for constructive termination is not recognized in the absence of some legislative or statutory mandate.

For all of these reasons, HRCC's Amended Complaint should be dismissed under Federal Rule 12(b)(3), (6) and (7).

**WHEREFORE**, Defendants request that the Court enter an order dismissing Plaintiff's First Amended Complaint.

[remainder of page intentionally blank]

***Local Rule 3.01(g) Certification***:  *The undersigned certifies that prior to bringing this Motion, he discussed the relief requested herein with counsel for Plaintiff and was unable to agree on resolution of the motion.*

s/Christian C. Burden
Christian C. Burden
Florida Bar No. 0065129
chris.burden@quarles.com
**QUARLES & BRADY LLP**
101 East Kennedy Blvd., Ste 3400
Tampa, FL 33602-5195
Tel. 813/387-0300
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I CERTIFY that on January 30, 2015, I electronically filed the above document with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

s/Christian C. Burden
Attorney